# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOSE LUIS MURO-LERMA, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:09-cr-00086-JCM-PAL <br><br> **REPORT OF FINDINGS AND RECOMMENDATION** <br><br> (Mtn to Dismiss - Dkt. #22) |

Before the court is defendant Jose Luis Muro-Lerma's ("Muro") Motion to Dismiss Based on Prior Unlawful Deportations (Dkt. #22) filed July 22, 2009 which was referred to the undersigned for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. The court has considered the Motion, the government's Response (Dkt. #24), and Muro's Reply (Dkt. #25).

## BACKGROUND

Muro is charged in a criminal Indictment (Dkt. #1) returned March 4, 2009 with one count of Unlawful Reentry of a Deported Alien in violation of 8 U.S.C. § 1326. The indictment charges that Muro was deported and removed from the United States on or about November 9, 1998; April 25, 2002; and December 10, 2002. The Indictment also alleges that on or about December 2, 2008, Muro returned and was found in the United States, having unlawfully reentered and remained without the express consent of the Attorney General or his successor, the Secretary for Homeland Security, under 6 U.S.C. §§ 202(3) & (4) and 6 U.S.C. § 557. In the current motion, Muro challenges the lawfulness of the November 9, 1998 removal order.

On June 4, 1997, Muro was charged by Information in the District Court of Clark County, Nevada, with Possession of a Controlled Substance with Intent to Sell, a felony, in violation of Nevada Revised Statutes ("N.R.S.") § 453.337. See Attachment to Government's Response at 1-2. On June 16,

1997, Muro pled guilty and was sentenced to twelve to thirty-two months in prison. Id. at 3, 10-11. On August 24, 1998, Immigration and Customs Enforcement became aware of Muro's presence in the United States and drafted a Record of Deportable/Inadmissible Alien and lodged a detainer against Muro, who was being held on the Nevada charge in the Clark County Detention Center. Id. at 12. On October 20, 1998, Muro was personally served with a Notice to Appear in Las Vegas, Nevada. See Exhibit A to Defendant's Motion to Dismiss. The Notice to Appear alleged that Muro: (1) was not a citizen or national of the United States; (2) was a native and citizen of Mexico; (3) entered the United States at or near the port of entry at San Ysidro, California in or about 1990; and (4) at that time he was not admitted or paroled after inspection by an Immigration Officer. Id. Although the immigration authorities were aware of Muro's felony conviction, he was alleged to be removable pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(a)(6)(A)(i), because he was an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

At a hearing before the immigration judge on November 9, 1998, Muro admitted the allegations in the Notice to Appear. See Transcript, attached as Exhibit B to Motion at 5. He was personally addressed by the immigration judge, he acknowledged that he understood the charges against him, and he admitted that he was illegally present in the United States and was removable as a result. Id. at 4. He waived his right to rebut or otherwise contest the charges contained in the Notice of Intent, and he requested to be removed to Mexico. See Exhibit A to Defendant's Motion to Dismiss at 3. The immigration judge also inquired whether Muro could afford to post a $500.00 voluntary departure bond, and Muro stated he could not. See Transcript at 4-5. Muro was physically removed to Mexico pursuant to a Warrant of Removal/Deportation on November 9, 1998. See Attachment to Government's Response at 13-14.

On March 5, 2002, Muro's probation for the 1997 conviction was revoked, and the original twelve to thirty-two month sentence was imposed. Id. at 15-16. On April 19, 2002, Muro was served with a Notice of Intent/Decision to Reinstate Prior Order, reinstating the 1998 removal order. See Exh. C to Motion. Muro indicated he did not wish to contest that determination. Id. On April 25, 2002, Muro was physically removed to Mexico. See Attachment to Government's Response at 17-18.

On December 10, 2002, Muro attempted to reenter the United States using a Resident Alien Card that was not issued to him. Id. at 19. That same day, he was served with a Notice and Order of Expedited Removal and was removed to Mexico. Id. at 20-21. On November 28, 2008, Muro was convicted in the District Court of Clark County, Nevada of trafficking in controlled substance and was sentenced to twenty-four to sixty months in prison. Id. at 22-23. He was interviewed by Immigration and Customs Enforcement officials on December 2, 2008 and admitted illegally reentering the United States in December 2002.

**The Parties' Positions**

Muro argues that he was unlawfully removed to Mexico on November 9, 1998 because there were errors made during the removal hearing of which Muro was not made aware. Muro asserts that he was eligible for fast-track voluntary departure pursuant to 8 U.S.C. § 1229c(a), and although the immigration judge asked Muro if he had money for a voluntary departure bond, failed to explain to Muro what voluntary departure means or that he was eligible for relief from removal. Muro states that based on the record before the immigration judge, Muro did not qualify as an aggravated felon. By failing to advise him of available relief, Muro's right to due process was violated. Muro also argues that his waiver of rights was invalid because the immigration judge did not specifically address availability of relief from removal with Muro or verify that Muro's decision to waive his rights was considered and intelligent. Muro asserts that he was exempted from the requirement to exhaust his administrative remedies because he was not advised of the available relief from removal.

Additionally, Muro argues that the expedited removal violated his right to equal protection because identically-situated non-permanent resident aliens are placed in standard removal proceedings and are not subject to expedited removal proceedings. Muro argues that there is no rational basis for the disparate treatment of identically situated aliens by the Department of Homeland Security ("DHS"). Muro argues that the statute which permits expedited removal for some immigrants and not others is unconstitutional under the Fifth Amendment's due process clause because it denies certain immigrants equal protection under the law.

In response, the government asserts that the Motion to Dismiss should be denied because Muro's conviction for possession of controlled substance with intent to distribute qualifies as an

1  aggravated felony under 8 U.S.C. § 1101(a)(43)(B).   The immigration authorities learned that Muro
2  was illegally in the country and that he had been convicted of Possession with Intent to Sell when they
3  interviewed him at the Clark County Detention Center on August 24, 1998.  Id. at 12.  As a result, Muro
4  was barred from the discretionary relief of voluntary departure under 8 U.S.C. § 1229c(a)(1).  The fact
5  that the conviction is not alleged as an aggravated felony in the Notice to Appear does not preclude it
6  from being used to disqualify Muro from relief from removal or deprive him of his due process rights.
7  Thus, the government argues Muro was not prejudiced by any alleged due process violation because he
8  was not eligible for the discretionary relief of voluntary departure.   In response to Muro's equal
9  protection challenge to the expedited removal statute, the government asserts that it does not involve
10 either fundamental rights or a suspect class, and it is therefore accorded a strong presumption of
11 validity.  The government notes that Congress has broad and sweeping powers over immigration
12 matters and has determined that there is a legitimate and rational basis to treat illegal aliens differently
13 based upon whether they are in the United States or not.  The government also cites United States v.
14 Calderon-Segura, 512 F.3d 1104, 1107 (9th Cir. 2008), in support of its argument that there is a rational
15 basis to place aggravated felons in expedited removal proceedings.
16      In reply, Muro asserts that based upon the record before the immigration judge in his 1998
17 removal proceeding, Muro was eligible for voluntary relief.  Muro argues that the government's
18 position rests upon an "unsupported speculation" that the government could have proven the existence
19 of a conviction at Muro's hearing.  Muro argues that the lack of documentation is significant because
20 Muro denied having a conviction or aggravated felony.  Muro also states that he is not asserting a
21 procedural due process challenge to the expedited removal statute, but rather, a substantive due process
22 challenge.

23                                    **DISCUSSION**
24 **A.     The Legal Standard for Collateral Attack of a Prior Deportation Order**
25      The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No.
26 104-208, 110 Stat. 3009-546 ("IIRIRA"), changed the terminology of the Immigration and Nationality
27 Act ("INA").  Before IIRIRA, aliens who committed aggravated felonies were placed in *deportation*
28 proceedings after being served with an order to show cause.  Ram v. INS, 243 F.3d 510, 513 (9th Cir.

2001). After IIRIRA, aliens are placed in *removal* proceedings after being served with a notice to appear. The cases frequently use the terms deportation and removal interchangeably. 8 U.S.C. § 1326(a) makes it a crime for an alien to enter, attempt to enter, or to be found within the United States without consent of the Attorney General after being denied admission, excluded, deported, or removed.

A defendant may collaterally attack a prior deportation or removal to preclude the government from relying on the deportation in a prosecution under section 1326. Such collateral attacks of underlying deportations or removals rely on the Supreme Court's decision in United States v. Mendoza-Lopez, which held that the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation. 481 U.S. at 838-39; see also United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). After the Supreme Court's holding in Mendoza-Lopez, Congress codified when underlying deportations would be subject to such attacks in 8 U.S.C. § 1326(d). This section reiterates the Court's holding in Mendoza-Lopez, but it also adds an administrative exhaustion requirement. Pursuant to section 1326(d), an alien may not collaterally attack an underlying deportation proceeding unless he demonstrates that: (1) he exhausted his administrative remedies to seek relief against the deportation order; (2) the deportation proceeding improperly deprived him of the opportunity for judicial review; and (3) the order was fundamentally unfair. The Ninth Circuit has held that a defendant must demonstrate that his due process rights were violated by defects in his underlying deportation proceeding, and that he suffered prejudice as a result of the violation. United States v. Proa-Tovar, 975 F.2d 592, 594-95 (9th Cir. 1992) (en banc); Arrieta, 224 F.3d at 1079.

"In a criminal proceeding, an alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order." Id. (citing United States v. Estrada-Torres, 179 F.3d 776, 780-81 (9th Cir. 1999)), cert. denied, 531 U.S. 864 (2000), overruled on other grounds by, United States v. Rivera-Sanchez, 247 F.3d 905 (9th Cir. 2001)). The exhaustion requirement in section 1326(d) cannot bar collateral review of a deportation proceeding unless the waiver of the right to administrative appeal comports with due process. United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001). A waiver of appeal is valid and comports with due process when it is both "considered and intelligent." Arrieta, 224 F.3d at 1079. "Such a waiver is not 'considered and

intelligent' when 'the record contains an inference that the petitioner is eligible for relief from deportation,' but is not "advise[d] . . . of this possibility and give[n] . . . the opportunity to develop the issue.'" Muro-Inclan, 249 F.3d at 1182 (quoting Arrieta, 224 F.3d at 1079 (internal quotation omitted)). If the waiver is not considered and intelligent, the deportee is deprived of judicial review in violation of due process. United States v. Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993) (per curiam). The government bears the burden of proving the waiver. Id.

When a defendant moves to dismiss an indictment under § 1326 based on a violation of due process in the underlying removal proceeding, he must also show that prejudice resulted from the violation of his due process rights. Muro-Inclan, 249 F.3d at 1184. "To establish prejudice, petitioner does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." Id. (citation and internal quotation omitted).

**B.     Notice to Appear**

The October 20, 1998 Notice to Appear, attached as Exhibit A to the Motion to Dismiss, charged that Muro was removable under section 212(a)(6)(A)(i) of the INA as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. The government's Response asserts that because Muro was convicted of a crime which qualifies as an aggravated felony under § 1101(a)(43)(B), he was not eligible for any relief from removal and cannot show he was prejudiced by any due process violation. Section 1101(a)(43)(B) defines "aggravated felony" as "any illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Although each is an independent basis to remove an illegal alien, the fact that Muro was alleged to be removable under 212(a)(6)(A)(i) of the INA, rather than as an aggravated felon in the Notice to Appear does not violate his due process rights. In Salviejo-Fernandez v. Gonzalez, the Ninth Circuit joined the Second and Fifth Circuits holding that "due process does not require inclusion of the charges in the NTA [Notice to Appear] that are not grounds for removal but are grounds for denial of relief from removal." 455 F.3d 1063, 1066 (9th Cir. 2006). The Ninth Circuit found that an alien's due process rights are satisfied where the Notice to Appear contains: (a) the nature of the proceedings against the alien; (b) the legal authority under which the proceedings

are conducted; and (c) the acts or conduct alleged to be in violation of the law; and (d) the charges against the alien and the statutory provisions alleged to have been violated. Id.

Here, Muro was apprised of all four requirements in the Notice to Appear–namely, that removal proceedings were being instituted against him pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act and that he had unlawfully entered the United States. His due process rights were not violated because removal proceeding were initially instituted against him for being unlawfully present in the United States.

### C.   Qualification as Aggravated Felony

The primary question for the court to address is whether Muro's conviction for possession of a controlled substance with intent to sell under N.R.S. 453.337 qualifies as an aggravated felony for immigration purposes. If it does, Muro was not eligible for relief from removal through voluntary departure under section 1229(c)(A)(2), and there was no due process violation.

**The Categorical Approach**

To determine whether a conviction under N.R.S. 453.337 constitutes a drug trafficking offense within the meaning of 8 U.S.C. § 1101(a)(43), the court must first apply the "categorical approach" set forth in Taylor v. United States, 495 U.S. 575 (1990). The categorical approach requires the court to "make a categorical comparison of the statute of conviction to the generic definition [of the crime] and decide whether the conduct proscribed [by the statute] is broader than, and so does not fall within, this generic definition." Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1152 (9th Cir. 2008). In applying the categorical approach, the court does not look at the particular facts underlying the offense but instead looks "only to the fact of conviction and the statutory definition of the prior offense." Id. (citing Taylor, 495 U.S. at 602).

To determine whether a conviction pursuant to a state statute qualifies as an aggravated felony, courts are instructed to make a categoric comparison of the elements of the statute of conviction to determine whether the conduct proscribed by the statute is broader than the generic definition. Chang v. INS, 307 F.3d 1185, 1189 (9th Cir. 2000). "In the absence of specific congressional guidance as to the elements of a crime, courts have been left to determine the 'generic sense in which the term is now used in the criminal codes of most States.'" Estrada-Espinoza at 1152 (citing Taylor, 495 U.S. at 598).

1   It is not necessary to examine the generic definition of "drug trafficking crime" in the criminal codes of
2   most states because the Supreme Court has held that "[t]he term 'drug trafficking crime' means any
3   felony punishable under the Controlled Substances Act." Lopez v. Gonzalez, 549 U.S. 47 (2006).
4          Moreover, the term "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43)(B) as "any illicit
5   trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking
6   crime (as defined in section 924(c) of Title 18)." Id. A controlled substance is "a drug or other
7   substance, or immediate precursor," listed on the accompanying schedules and includes heroin.
8   21 U.S.C. § 802(6). Drug trafficking means "any felony punishable under the Controlled Substances
9   Act." 18 U.S.C. § 924(c)(2). The Controlled Substances Act defines felony as "any Federal or State
10  offense classified by applicable Federal or State law as a felony." In Cazarez-Gutierrez v. Ashcroft,
11  382 F.3d 905, 912 (9th Cir. 2004), the Ninth Circuit adopted the approach taken by the Second and
12  Third Circuits and held "that a state drug offense is an aggravated felony for immigration purposes only
13  if it would be punishable as a felony under federal drug laws or the crime contains a trafficking
14  element." Id.
15         The Ninth Circuit has found that a conviction under N.R.S. 453.337 "fits comfortably within a
16  drug trafficking offense" because "the only conduct criminalized is possession of a controlled substance
17  for the purpose of sale." United States v. Benitez-Perez, 367 F.2d 1200, 1204 (9th Cir. 2004)
18  (analyzing conviction under Taylor for purposes of sentencing). Muro was convicted under N.R.S.
19  453.337 for possessing a controlled substance (heroin) with the intent to sell, and his conviction
20  categorically qualifies as an aggravated felony for immigration purposes. As an aggravated felon, Muro
21  was ineligible for relief from removal through voluntary departure under § 1229(c)(A)(2).
22         **D.     Equal Protection Challenge.**
23         Muro challenges 8 U.S.C. § 1225(b)(1) as a violation of his right to due process under the Fifth
24  Amendment because it deprives him of his right to equal protection under the laws. The statute, added
25  to the INA by IIRIRA, established the expedited removal process and provides:
26              (b)(1)   Inspection of aliens arriving in the United States and certain other
                         aliens who have not been admitted or paroled
27              (A)      Screening
28              (i)      In general

> If an immigration officer determines that an alien...who is arriving in the United States...is inadmissible under section 1182(a)(6)(C) [misrepresentation or fraudulent documentation] or 1182(a)(7) [no valid documentation] of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien removed from the United States without further review indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

Id.

Muro argues that identically-situated non-permanent resident aliens can either be placed into a removal proceeding before an Immigration Judge under § 1229a or in an expedited removal proceedings in which they are not permitted to appear before an immigration judge under § 1225(b)(1). In an ordinary removal proceeding, an alien is eligible for relief from removal; in an expedited removal proceeding, however, he or she is not. Muro asserts that there is no rational basis to make the distinction between identically-situated non-permanent resident aliens, and the DHS's "interpretation of the expedited removal procedure and creation of a smaller subset of non-permanent resident aliens has resulted in an unequal practice." Motion at 10:20-22. The government responds by pointing to the jurisdiction stripping provisions of the expedited removal statute and by citing cases to show that immigrants within the United States–even illegally–have due process rights, but those outside the country who are stopped and denied admission at the border because they either cannot document their legal status or provide false documentation do not have the same rights.

Congress enacted the expedited removal procedure because it found that "thousands of aliens arrive in the U.S. at airports each year without valid documents and attempt to illegally enter the U.S." H.R. Rep. No. 104-469(I) at 158 (1996). Muro's argument ignores the fact that immigrants subject to § 1225 are those who have either presented no documentation or submitted false documentation at the U.S. border. Congress had a rational basis for placing immigrants presenting no documentation or fraudulent documentation at the U.S. border in expedited removal proceedings. Muro was not identically situated to other immigrants subject to §1229a. Here, Muro was stopped at the border on December 10, 2002 when he attempted to re-enter the United States using a resident alien card that did not belong to him. He was placed in an expedited removal proceeding the same day.

The Ninth Circuit has stated that although all individuals within the United States are afforded due process, the Attorney General's discretion in treating certain immigrants differently than others

does not implicate "fundamental rights or involve[] a classification along suspect lines," and therefore, "only rational basis scrutiny applies." United States v. Calderon-Segura, 512 F.3d 1104, 1107 (9th Cir. 2008); Taniguchi v. Schultz, 303 F.3d 950, 957 (9th Cir. 2002); see also Heller v. Doe, 509 U.S. 312, 319-20 (1993) (stating "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of reliability....Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of the treatment and some legitimate governmental purpose"). The Ninth Circuit has also recognized that "Congress has particularly broad and sweeping powers when it comes to immigration, and is therefore entitled to an additional measure of deference when it legislates as to admission, exclusion, removal, naturalization or other matters pertaining to aliens. Abebe v. Mukasey, 554 F.3d 1203, 1206 (9th Cir. 2009). Finally, in Calderon-Segura, the court found that there was a rational basis for the Attorney General's decision to place aggravated felons in an expedited removal proceeding because it was "a rational first step towards the legitimate goal of rapidly removing criminal aliens. Id. at 1107-08. Muro has been an aggravated felon for immigration purposes since 1997 based on his first Nevada conviction under N.R.S. 453.337. His due process rights were not violated because he was placed in expedited removal proceedings.

For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that Muro's Motion to Dismiss Based on Prior Unlawful Deportations (Dkt. #22) be **DENIED.**

Dated this 28th day of September, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE